**In re LETTERS ROGATORY FROM the 9TH CRIMINAL DIVISION, REGIONAL COURT, MANNHEIM FEDERAL REPUBLIC OF GERMANY.**

No. 77–7106–Civ–SMA.

United States District Court,
S. D. Florida.

April 11, 1978.

Jerome B. Ullman, Jr., Miami, Fla., for petitioner.

Daniel S. Pearson, Miami, Fla., for respondent.

## ORDER DENYING MOTION TO COMPEL TESTIMONY

ARONOVITZ, District Judge.

Application was made to this Court under 28 U.S.C. Sec. 1782 by the Regional Court, 9th Criminal Division, Mannheim, Federal Republic of Germany (West Germany) through the United States Attorney for the Southern District of Florida, to appoint a commissioner, pursuant to Letters Rogatory issued by the above-named Court, for the purpose of requiring the answer under oath to certain questions pertinent to a criminal judicial prosecution pending therein, by a witness, Miles C. Dearden, Sr., a U.S. citizen, who resides within the jurisdiction of this Court.

Thereupon, this Court appointed Jerome B. Ullman, Esq. to serve as commissioner to preside over all proceedings in said matter, to supervise the conduct of these proceedings, and to take such other steps as may be necessary to obtain the testimony of Miles C. Dearden, Sr.

At the hearing held before the commissioner, the witness refused to answer the questions posed to him, claiming (1) possible self-incrimination in violation of his Fifth Amendment privilege, and (2) protection under Paragraph 55 of the German Code of Civil Procedure (comparable to U.S. Fifth Amendment privilege but applying also if a dependent of the witness would be jeopardized). The commissioner moved this Court to compel Miles Dearden, Sr. to answer the questions propounded per the Letters Rogatory.

The testimony requested relates to the witness' knowledge of First Liberty Fund and is needed for a criminal prosecution pending in West Germany against Volker and Jergen Reible, citizens of West Germany. The West German government charges that during 1970 and 1971 the Reibles sold $1.9 million dollars worth of shares of First Liberty Fund in West Germany and that the Reibles knew the shares were fraudulent and worthless.

Miles Dearden, Sr. was convicted in this Court in 1975 on numerous counts of an indictment charging that he and various other persons operated First Liberty Fund in the Southern District of Florida during 1970 and 1971 and that they knowingly caused fraudulent and worthless shares of First Liberty Fund to be sold in Germany by the Reibles. Mr. Dearden did not appeal his conviction. The convictions of the co-defendants were affirmed. *United States of America v. Miles Dearden, Jr., et al.,* 546 F.2d 622 (5th Cir. 1977).

The witness declined to answer all questions propounded to him in connection with the First Liberty Fund as contained in the Letters Rogatory and based such refusal (1) on his Fifth Amendment rights and (2) upon Paragraph 55 of the German Code of Civil Procedure. The commissioner argues in his Motion to Compel that inasmuch as Mr. Dearden has already been convicted for the First Liberty Fund transaction, he cannot claim the privilege of the Fifth Amendment. Moreover, the commissioner relies upon a letter of the Consulate General of the Federal Republic of Germany attached to the Motion stating that Mr. Dearden cannot and will not be prosecuted by the German government for activities related to First Liberty Fund.

28 U.S.C. Sec. 1782 providing for assistance to foreign and international tribunals and to litigants before such tribunals, contains the following pertinent provision . . . "A person may not be compelled to give his testimony or statement or to produce a document or other thing *in violation of any legally applicable privilege.*" (emphasis added).

Dearden urges that notwithstanding his conviction in the United States District Court for the Southern District of Florida in 1975, the Fifth Amendment privilege against self-incrimination may still be asserted where there exists a substantial risk of foreign prosecution, *United States v. Postal,* 559 F.2d 234 (5th Cir. 1977), and *In re Tierney,* 465 F.2d 806 (5th Cir. 1972). Also, that the assurances given by the letter

do not facially serve to reduce the risk of foreign prosecution inasmuch as the letter does not equate to or with a grant of immunity and purports to be based upon the prosecutor's interpretation of the applicable West German Statute of Limitations; that while ordinarily the law does not permit assertion of the Fifth Amendment privilege against self-incrimination when the possible incrimination is the risk of being accused of perjury in the very statement to be given, the unique circumstances of this case seem to require a different ruling.

■ The Fifth Circuit held in *Postal* and *Tierney*, supra, that there was no danger of foreign prosecution therein since the testimony was being elicited before a Federal Grand Jury and because of the Grand Jury secrecy provisions of Rule 6(e), Federal Rules of Criminal Procedure, such testimony would never be available to the foreign government. Contrasted, however, with the case sub judice, the testimony here is being sought directly by the foreign government which Dearden reasonably fears may prosecute him and where the testimony specifically is intended to be made available to such government.

In *Zicarelli v. New Jersey Investigation Commission* 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972) the Supreme Court held that the privilege protects against real dangers, not remote and speculative possibilities. In that case the evidence did not bear out the witness' claimed reason for fearing foreign prosecution. Here, though, by contrast, the very testimony which the witness gives is being sought directly by the foreign government which Dearden fears may prosecute him and where the testimony specifically is intended to be made available to such government.

It is true that West Germany has no immunity procedures comparable to those in the United States. However, West Germany operates under a system which contains "the rule of compulsory prosecution." That rule and its consequences are discussed by John H. Langbein, Professor of Law, University of Chicago Law School, in his treatise Comparative Criminal Procedure: Germany, West Publishing Company, 1977:

> "The German prosecutor is a figure of uncommon interest to Anglo-American lawyers, for in the conduct of his duties he is short of two powers that we are accustomed to regard as controversial yet inherent features of the prosecutorial office. In cases of serious crime the German prosecutor is required to prosecute every case; that is, he lacks the power of discretionary nonprosecution. . . ." (p. 87).

\* \* \* \* \* \*

> "The kernel of the German scheme is set out, . . . as StPO sec. 152(II):
>
> "(The public prosecutor) is required to take action against all prosecutable offenses, to the extent that there is a sufficient factual basis.
>
> "This is the celebrated *Legalitatsprinzip* of German law (literally, the legality principle; better, the rule of compulsory prosecution). The Germans have undertaken to forbid their monopolist prosecutor the discretion to refuse to prosecute in cases where adequate incriminating evidence is at hand." (p. 89).

\* \* \* \* \* \*

> "The German prosecutor who, for example, is ordered by his minister not to prosecute in a case of political corruption must disobey the order. StPO Sec. 152(II) requires him to prosecute and failure to do so is itself criminal. Hence, although the rule of compulsory prosecution limits the power of the prosecutor, it is also a fundamental protection for him. It is the basis of the judicial character of his office, the source of his freedom from improper interference from above." (p. 91).

\* \* \* \* \* \*

The same author points out thereafter that if a public prosecutor fails or refuses to prosecute in accordance with his duty there is a statutory procedure whereby he can be compelled to proceed with the charges. Usually such compulsion can be brought about by the victims of a given crime. In

this instance there are allegedly 600 victims of the sale of shares of First Liberty Fund residing in West Germany and therefore there is a substantial risk that even if the prosecutor fails or refuses to bring charges, that one or more of the victims may compel him to do so.

As earlier noted the German prosecutor insists that the statute of limitations (five years) has run on any offense concerning which the witness could be charged. However, the witness' counsel has cited to this Court and a review of the West German code confirms that there are other offenses for which the witness apparently could be charged carrying terms of imprisonment as lengthy as ten years and thereupon bearing a ten-year statute of limitations which would not yet have run for these crimes and consequently the letter is facially inadequate.

The prohibition on the use of the Fifth Amendment privilege against self-incrimination was based upon the foregone conclusion that the witness could no longer be incriminated by his testimony concerning the crime and this reasoning prevails in *Reina v. United States*, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960) and *In re Liddy*, 165 U.S.App.D.C. 254, 506 F.2d 1293 (1974). This Court concludes that in view of the particularly delicate factual setting of this case, coupled with the inherent nature of the Federal Republic of Germany's criminal procedures, such a conclusion cannot be reached for there is no guarantee or protection afforded that the German government cannot or will not be required to prosecute Mr. Dearden or his son.

■ Dearden also points to the possible incrimination by reason of the risk of being accused of perjury in the United States inasmuch as he was prosecuted by the United States Government and convicted. He points out that the prosecutors and a jury believed that Dearden was part of a conspiracy to defraud others by means of false and fraudulent pretenses, that Dearden knew that shares of First Liberty Fund were worthless, and that Transcontinental Insurance Company, the insuror of the investment in First Liberty Fund, was worthless.

The questions now being put to Dearden relate precisely to his knowledge of these companies and their value or not. Dearden did not testify at the trial of his case. He pled not guilty. If he now testifies for the first time and were he to say *truthfully* that he did not know that First Liberty Fund or Transcontinental Insurance Company were worthless companies, it is evident that the United States prosecutors would disbelieve him. The very existence of his testimony, although truthful, would immediately expose him to an indictment for perjury. The government could attempt to prove perjury by the very proof submitted at his trial in this Court in 1975.

Additionally to the Fifth Amendment privilege, the witness also asserts that although West Germany does not have the equivalent of the American grant of immunity, nevertheless, it does have the privilege equal to the Fifth Amendment right (Par. 55 West German Civil Code); and that the West German code permits a refusal to answer based upon incrimination of one's self or a dependent; that the letter of assurance from the West German prosecutor contains no evidence or indication that the witness' son, Miles Dearden, Jr., who was convicted in the United States, will not be exposed again to prosecution in West Germany.

This Court emphasizes that the Chief Judge of the Court which issued the Letters Rogatory and the Prosecutor of said Court as well as the Office of the Prosecutor have all been extremely cooperative and helpful in their efforts to seek to resolve this matter which has been presented. To evidence such good faith efforts additional letters and assurances have been forthcoming reemphasizing the circumstances as applied without immunity but with an interpretation based upon the applicable statute of limitations. This Court would like nothing better than to be able to accede to a request from a sister Court in a foreign jurisdiction in a matter undertaken in the interests of justice and seeking information for use in a

trial. However, what is at the heart of today's decision is the compelling necessity to protect American citizens from unjust infringements of their constitutional rights and privileges. Accordingly, this Court's duty requires it to look carefully at all pertinent factors in its effort to accurately assess its citizens' susceptibility to future prosecutions either foreign or domestic. We are further persuaded by the arguments of the witness that his testimony could readily result not only in future foreign prosecution but in future domestic prosecution as well. Accordingly, this Court concludes that the witness Miles C. Dearden, Sr. is entitled to assert his Fifth Amendment privilege against self-incrimination since there is reasonable and appreciable fear of foreign and/or domestic prosecution and such risk is neither speculative nor remote and, in fact, it is established as real. Thereupon, it is—

ORDERED AND ADJUDGED that the Motion to Compel Testimony filed herein by the commissioner addressed to the witness Miles C. Dearden, Sr. be and the same is hereby DENIED.

DONE AND ORDERED at Miami, Florida this 11 day of April, 1978.