UNITED STATES of America

v.

Arnold Richards TRUCIS.

Civ. A. No. 80–2321.

United States District Court, E. D. Pennsylvania.

April 16, 1981.

---

Richard D. Sullivan, Washington, D. C., for plaintiff.

John W. Norris, Philadelphia, Pa., Ivars Berzins, New York City, for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

The United States has brought suit against Arnold Trucis, seeking revocation of his December 18, 1956 Certificate of Naturalization. The gravamen of the suit is that, when he petitioned to become a naturalized citizen, Trucis knowingly concealed certain biographical facts—facts showing his participation in the persecution of unarmed Jewish civilians during 1941-43 in Riga, Latvia—disclosure of which would have led to the denial of Trucis' petition for naturalization. 8 U.S.C. § 1451.

Now before me are two discovery motions: (1) the Government's motion to compel Trucis' answers at a deposition and the production of documents, and (2) Trucis' motion for a protective order prohibiting scheduled depositions in Latvia.

I. *Government's Motion to Compel*

### A.

Trucis has refused to answer questions or provide documents on the basis of his Fifth Amendment privilege against self-incrimination. It is conceded that there is no possibility of prosecution in the United States. Accordingly, the principal issue of law is whether—as Trucis contends and the

Government denies—possible prosecution by a *foreign* sovereign brings the constitutional privilege into play.

The Supreme Court has not directly addressed the issue.[1] But in determining that the privilege does apply as between the United States and the several states, *Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), the Court did give some weight to English case law supportive of the proposition that the English privilege, from which our privilege derives, affords protection beyond the realm. The Court's mode of approach to the applicability of the privilege in the federal-state context has led Judge Newman to hold that the privilege also applies as between the United States and foreign nations. *In re Cardassi*, 351 F.Supp. 1080 (D.Conn.1972). And Judge Fullam has followed Judge Newman. *United States v. Kowalchuk*, No. 77–118 (E.D.Pa. October 20, 1978). *Cf. In re Federal Grand Jury Witness*, 597 F.2d 1166, 1169 (9th Cir. 1979) (Hufstedler, J., concurring). But there is authority the other way. *In re Parker*, 411 F.2d 1067, 1070 (10th Cir. 1969), *vacated as moot*, 397 U.S. 96, 90 S.Ct. 819, 25 L.Ed.2d 81 (1970).

In this case, the Government has been unable to provide any assurances that, in the event he loses his citizenship, Trucis would not be sent to a nation interested in his prosecution.[2] And so the Government takes the broad ground that it is entitled to an order from this court compelling potentially incriminating answers from Trucis, notwithstanding that it may thereafter deliver Trucis to a foreign government which may use those answers to fuel a criminal prosecution.

For the reasons given by Judges Newman and Fullam, I conclude that I cannot, consistently with the Fifth Amendment, direct Trucis to give what may be incriminating testimony—at least where, as here, the possible foreign prosecution would be for crimes recognized as such in this country.[3] For the privilege is not simply a limit on the activities of American courts and law-enforcement authorities: it is a freedom conferred upon persons within the protection of American law. *Cf. In re Letters Rogatory From the 9th Criminal Division, Regional Court, Mannheim Federal Republic of Germany*, 448 F.Supp. 786 (S.D.Fla. 1978) (U.S. citizen protected against foreign Government's inquiry where foreign prosecution is contemplated).

### B.

Given Trucis' entitlement to invoke the privilege, the next issue before me is the substantiality, or reasonableness, of his fear of prosecution. None of the foreign sovereigns named in Trucis' memoranda—the Soviet Union, Israel, and West Germany—has expressed any interest in Trucis' prosecution. I conclude, however, that the atrocious nature of the crimes with which he is charged, coupled with the distinct possibility that, should Trucis' citizenship be revoked, he will be removed to an interested nation,[4] are, in combination, sufficient to give substance to his fears. *Compare United States v. Yanagita*, 552 F.2d 940, 946 (2d Cir. 1977).

While I conclude, therefore, that Trucis may invoke the Fifth Amendment in these discovery proceedings, invocation of the privilege is limited to those questions posing a real threat of incrimination. Trucis has argued that virtually all the information requested of him would forge links in a chain of circumstances proving his identity as one involved in the wartime persecution

---

1. The question was presented in *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972), but the Court disposed of *Zicarelli* on other grounds.

2. See note 4, *infra*.

3. *Cf. In re Parker, supra* at 1070.

4. At oral argument, I requested the Government to determine whether it could give any assurance that Trucis would not be deported or extradited to a country interested in his prosecution for war crimes. By letter of February 27, 1981, the Government replied that it "has carefully considered this option[;] however it will not be possible to give defendant any such assurances."

of Jews. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). However, certain matters—e. g., the circumstances, and associated documents, surrounding his entry into this country—are too far removed from the information needed to prosecute Trucis to permit the privilege's invocation. As the person whose naturalization is at issue, Trucis must answer questions concerning his identity and all other matters pertaining to his entry into the United States and the subsequent naturalization proceedings. He need not answer questions concerning his activities in Latvia during the war years. *Kowalchuk, supra.*

The documents described in the Government's Request for Production, also the subject matter of Trucis' invocation of the Fifth Amendment, may contain incriminating information; but defendant has made no showing—indeed has not attempted to show—that their production will be "testimonial." *Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976); *ICC v. Gould*, 629 F.2d 847, 859 n.22 (3d Cir. 1980); *Matter of Grand Jury Empanelled*, 597 F.2d 851, 860–61 (3d Cir. 1979).[5] Therefore, the requested documents will be required to be submitted to the Government within two weeks of the date of this Memorandum.

## II. *Defendant's Motion for Protective Order*

■ The Government has served notice of its intention to take the videotape depositions in Latvia of witnesses resident there. F.R.C.P. 28(b); 30(b)(4). Trucis has moved for a protective order, asserting that trustworthy depositions simply cannot be had in the Soviet Union. In support of the motion, Trucis has cited, at great length, the "exploits of the KGB," Lenin's writings and extracts from books on the Soviet legal

system. While certain of these references remind us that the Soviet legal system is unlike our own, with less of an institutional and constitutional commitment to the adversary process, the references do not establish as matter of law that no deposition taken in the Soviet Union would be reliable. In any event, devices familiar in the American legal system and available with respect to the projected depositions in Latvia—such as cross-examination; videotaping itself; and also the opportunity prior to and/or at trial to adduce testimony as to the setting within which the depositions are taken—all offer significant assurance that credibility issues can be fully explored before the factfinder. Accordingly, I will permit the depositions.[6]

■ Finally, Trucis has asked that, in the event the depositions go forward, certain conditions be imposed. The Government has consented to one condition—namely, that the burden of making travel arrangements for Trucis' attorney be assumed by the Government. Trucis also requests that the depositions be held (1) at a United States consulate or embassy, (2) before a United States citizen, (3) without a Soviet official present, and (4) without being disclosed to Soviet authorities. It is the Government's uncontested representation that depositions conducted under the proposed conditions contravene Soviet practice. Thus it appears likely that to grant these four requests, or any of them, would preclude the taking of the proposed depositions. Therefore, I will deny these requests. At trial it will be open to Trucis to undertake to demonstrate that the depositions are not sufficiently trustworthy to meet evidentiary standards.

Trucis' request that the interpreter be a United States citizen will be denied for

---

**5.** Nor has Trucis attempted to show that the production will involve an intrusion into his private books and papers. *Cf. Fisher, supra*, 425 U.S. at 415, 96 S.Ct. at 1583 (Brennan, J., concurring in the judgment); *In re Grand Jury Proceedings*, 632 F.2d 1033, 1043–44 (3d Cir. 1980).

**6.** Trucis' attorney has also filed an "Opposing Affirmation" which objects to the videotaping on the basis that Trucis has no videotape machine and will therefore be unable to review the tapes. Taking it as a matter of course that the Government will afford Trucis and his attorney every reasonable opportunity to review the tapes, I will deny this motion.

similar reasons: The accuracy of the recorded translation may be tested here, before the videotape is introduced in evidence.

 Trucis' request that his attorney be given an official or diplomatic passport will also be denied: The Government has advised that State Department regulations do not allow the issuance of such a passport to a private attorney; and Trucis' allegations of "indignities and harassment by the Soviet authorities" in another case do not persuade me that those regulations should be overridden by a court order.

Finally, Trucis' request for an advance payment of his attorney's travel expenses will be denied without prejudice. If Trucis cannot afford the expense, an affidavit of his financial condition and references to the appropriate statutory authority should be provided in an appropriate motion.[7]

---

7. Should Trucis file such a motion, it should address the Government's request that any court order not require the prepayment of subsistence expenses, but provide only for their reimbursement.