## RICE'S TOYOTA WORLD, INC., Plaintiff,

### v.

## SOUTHEAST TOYOTA DISTRIBUTORS, INC. and Toyota Motor Sales, U.S.A., Inc., Defendants.

### No. C–86–992–G.

United States District Court, M.D. North Carolina, Greensboro Division.

Feb. 24, 1987.

Donald R. Strickland, Raleigh, N.C., for plaintiff.

R. Wilson Day, Raleigh, N.C., Raymond W. Bergan, Williams & Connolly, Washington, D.C., for Southeast Toyota Distributors.

L. Neal Ellis, Jr., David Dreifus, Raleigh, N.C., David D. Laufer, G. Webster Burns, Toyota Motor Sales, USA, Inc., Torrance, Cal., for Toyota Motor Sales, U.S.A., Inc.

### ORDER

RUSSELL A. ELIASON, United States Magistrate.

Plaintiff seeks blanket permission to video record all depositions in this case. Defendants oppose granting a carte blanche license for a variety of reasons. First, defendants assert that commercial litigation, by its nature, relies more on documents and figures and, therefore, there is less need for a video deposition in order to judge the demeanor of a witness. Next, they object to the unlimited nature of the request. Plaintiff has not restricted itself to taping depositions of persons residing outside the subpoena power of the Court or key witnesses whose sudden unavailability would create a hardship. Many of the depositions may simply be used for discovery which, defendants claim, should not be the subject of a video deposition. They oppose permitting plaintiff's attorneys operating the video equipment and want an independent operator. Finally, defendants gener-

ally object to the extra cost and disruption brought about by a video deposition.

Starting with defendants' claim that video depositions are not needed for commercial litigation, the Court disagrees. The mere description of the lawsuit does not reveal whether video depositions are helpful. For example, plaintiff is challenging the defendants' plan for allocating automobiles to its dealers. Restrictive allocation arose because of voluntary restraints imposed by Japan on shipment of its cars to the United States which creates a scarcity, requiring a distribution plan. The present procedure allocates cars based on the amount of a dealer's sales. While seemingly fair, some dealers allegedly seek to increase their share by reporting sham sales to a holding company, and by currying favor with the distributors such as by ordering cars loaded with highly profitable accessories or pushing unwanted warranty programs on the buyer. Many of North Carolina's thirty-nine dealers and their sales managers may well deny the truth of these allegations since it would implicate them in defendants' violations and perhaps lead to a reduction of the automobiles they receive. Accepting plaintiff's recitation as true, video depositions may be extremely valuable by capturing the demeanor, hence credibility, of these witnesses.

■ On the other hand, one must agree with defendants that at first blush, plaintiff's request to video record all depositions seems unwarranted and perhaps contrary to the rules of civil procedure. Closer inspection considerably abates the concern. The Court agrees with defendants that plaintiff is required to demonstrate need before being permitted to take a non-stenographic deposition. Rule 30(b)(4), Fed.R. Civ.P., contemplates that a non-stenographic deposition will be taken only upon written stipulation of the parties or upon motion and order of the court. *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1175 (D.C.Cir.1985). The rule does not authorize a non-stenographic deposition as a matter of right. *Roberts v. Homelite Div. of Textron, Inc.*, 109 F.R.D. 664, 666 (N.D.Ind.

1986), and Fed.R.Civ.P. 30 advisory committee notes (1980 Amendment) reporting rejection of such a proposal. In order to utilize non-stenographic deposition methods, a party must show more than a personal preference for recording in such a manner. *Colonial Times, Inc. v. Gasch*, 509 F.2d 517, 522 n. 10 (D.C.Cir.1975).

While Rule 30(b)(4) requires some justification for employing a non-stenographic deposition, its history also indicates that experimentation is to be encouraged. In 1970, Rule 30(b)(4) was amended to permit non-stenographic recording such as by mechanical, electronic, or photographic means. *See* Fed.R.Civ.P. 30 advisory committee notes (1970 Amendment). The Advisory Committee advanced reduced costs as a reason for permitting such procedures. Because of its concern for accuracy and trustworthiness of new, untried methods, the Committee felt that a party should be required to apply for a court order before employing a novel recording method. By 1980, the rule was amended to permit non-stenographic depositions upon the stipulation of the parties. The Advisory Committee Notes by this time emphasized the need to permit freer experimentation in order to derive the benefits from technological advances in recording. *Roberts v. Homelite Div. of Textron, Inc., supra,* at 667; *Jahr v. IU Intern. Corp.*, 109 F.R.D. 429, 431 (M.D.N.C.1986). As part of the plan to encourage the use of, and experimentation in, different recording methods, Rule 30(b)(7) was amended to permit telephonic depositions upon order of the court. *Jahr, supra.* Rule 30(b)(4) has been viewed as embodying an "invitation to experiment." *Lucas v. Curran*, 62 F.R.D. 336, 338 (E.D. Pa.1974).

■ In accepting the invitation to experiment, courts should be amenable to technological advances, which provide opportunities to improve judicial procedures, even though not contemplated by the rule makers. As stated by the Court in *Matter of Daniels*, 69 F.R.D. 579, 581 (N.D.Ga.1975), with respect to video depositions: "The court should not be like an ostrich, sticking

its head in the sand and being oblivious to advances in technology which can aid in the judicial process." In general, whenever accuracy and trustworthiness can be ensured, it is the better practice to permit electronic recordation of depositions. *Barham v. IDM Corp.*, 78 F.R.D. 340, 341 (N.D.Ohio 1978). Notwithstanding, a literal interpretation of the Fed.R.Civ.P. 30 advisory committee notes (1970 Amendment) led one court to express an opinion that experimentation may only be countenanced when the result leads to cost savings for the parties. *Perry v. Mohawk Rubber Company*, 63 F.R.D. 603, 607 (D.S.C.1974), *aff'd on other grounds*, 529 F.2d 516 (4th Cir.1976). This restrictive reading should be reconsidered in light of the continued encouragement of experimentation expressed in the Fed.R. Civ.P. 30 advisory committee notes (1980 Amendment) and to ensure that the courts will be receptive to the benefits which advances in technology may provide in enhancing "just and expeditious determination of litigation." *Matter of Daniels, supra*, at 581–82; *see Roberts v. Homelite Div. of Textron, Inc., supra*. Also, the Fed.R.Civ.P. 30 advisory committee notes did not contemplate the use of video depositions so the expressed concerns about cost may not be applicable. *See Matter of Daniels, supra*, at 582.

In applying Rule 30(b)(4) to video depositions, courts have good reason to be receptive to experimentation while not demanding cost efficiency as an essential condition. At the present time, a wish to reduce costs usually has little to do with a request to take a video deposition. Rather, the movant is more concerned with accuracy, trustworthiness, and improved judicial procedures, all of which are also major interests expressed in the Fed.R.Civ.P. 30 advisory committee notes. A video deposition better serves these objectives by permitting the fact-finder to utilize a greater portion of his perceptive processes then when merely reading or listening to a stenographic deposition. While we often make decisions by written word alone, when it comes to determining facts by comparing the testimonies of one or more persons, we do a better job by being able to employ as many of our senses as possible. Personally observing the witness is preferable. Next in rank would be viewing a video deposition where one directly uses the combined senses of hearing and seeing without the filtering process that occurs when one listens to a deposition being read or reads it himself from the cold record which excludes pitch and intonation of voice, rapidity of speech, and all the other aural and visual clues. Thus, it is not surprising to find in *Sandidge v. Salen Offshore Drilling Co.*, 764 F.2d 252, 259 (5th Cir.1985), the court listing the "legion of cases" which have extolled the advantages of video depositions and preference for their use in a trial, noting that a witness' demeanor reflected in his motions, expressions, voice inflections, etc., give the fact-finder a unique advantage in evaluating evidence, resulting in appellate courts granting greater deference to such findings. Video depositions can markedly increase accuracy and trustworthiness. In addition, to the extent that a video deposition reduces tedium, the fact-finder's concentration and attention will be enhanced, again to the benefit of the decision process. One court, faced with an entire trial presented through video depositions, agreeably anticipated the greater convenience and freedom in scheduling the trial which it would permit. *Lucien v. McLennand*, 95 F.R.D. 525 (N.D.Ill.1982).

■ The foreseeable hazards of relying on video depositions lie in the fact that there may be equipment failures and without court supervision over the attorneys, the record might not be suitable for use at trial. *Barham v. IDM Corp., supra*. To guard against such perils, some courts require a simultaneous recording by a stenographer. *Id*. Making and ruling on objections in order that the deposition may be used at trial may be another potential problem peculiar to a video deposition. Such procedure is simple with a stenographic deposition by reference to page and line where the objection appears which may then be studied by reading it. Perhaps in the near future, advances in the equipment

and familiarity with the new procedure will eliminate these as factors for concern so that a video deposition may in fact supplant a stenographic deposition and achieve real cost savings. In the meantime, this Court need not face that issue because plaintiff intends to stenographically record the deposition as well as video tape it at his own cost. This eliminates defendants concern over suitability because there will always be a stenographic backup present. Nor can defendants complain about the cost of taping the video deposition since plaintiff will underwrite it.

What remains of defendants' opposition to the video depositions is their claim that plaintiff must show some need beyond a mere preference or desire. Case law would seemingly support this view. The reported decisions permitting video depositions have mostly involved a key witness who is, or likely may be, unavailable for trial. *Lucien v. McLennand, supra*—(plaintiff inmate unavailable); *United States v. Trucis*, 89 F.R.D. 671 (E.D.Pa.1981)—(witnesses in Soviet Union); *Farahmand v. Local Properties, Inc.*, 88 F.R.D. 80 (N.D.Ga. 1980)—(essential witness unavailable); *Tsesmelys v. Dublin Truck Leasing*, 78 F.R.D. 181 (E.D.Tenn.1976)—(plaintiff's expert witness likely unavailable); *Continental Federal S. & L. Ass'n v. Delta Corp.*, 71 F.R.D. 697, 702 (W.D.Okla.1976)—(important witness unavailable); and *Matter of Daniels, supra*—(key witness potentially unavailable); *but see Westmoreland v. CBS, Inc.*, 584 F.Supp. 1206 (D.C.1984), *aff'd*, 770 F.2d 1168 (D.C.Cir.1985)—(concern video deposition may be used to harass non-party witness). Video depositions have also been authorized in order to permit the witness to reconstruct an accident. Aside from its use at trial, such a deposition has discovery value by making a record of the description of the event that cannot possibly be made by a mere steno-

graphic deposition. *Roberts v. Homelite Div. of Textron, Inc., supra*, and *Carson v. Burlington Northern, Inc.*, 52 F.R.D. 492 (D.Neb.1971). In the one instance where a party has sought to video tape all depositions, however, the motion was denied. *Perry v. Mohawk Rubber Company, supra*.

These cases do not persuade the Court that video depositions must be restricted to important witnesses who may be unavailable or to some other special circumstance. In the first place, because plaintiff is stenographically recording the deposition at the same time, the motion does not come within the literal terms of Rule 30(b)(4) which deals with alternative means of recording a deposition. Here, plaintiff is not dispensing with the stenographer but making an additional recording.[1] Therefore, the issue of whether to permit plaintiff to video record the deposition is not governed by Rule 30(b)(4) as much as by the Court's general authority to regulate the deposition process. However, to the extent plaintiff wants a video deposition suitable for use at trial, the Court looks particularly to Rule 30(b)(4) for providing guidance and determining conditions. Secondly, the Court is of the opinion that the time for experimentation with a large number of video depositions has arrived and should be tested in this case. Rule 30(b)(4) encourages experimentation and it appears that adequate technology is available to try the method. As a result of the dual recording proposed by plaintiff, the risks are minor and the Court sees no reason to restrict the video taping of the depositions. Rather, the more practical concern will be to establish procedures in the event plaintiff moves to use the depositions at trial. Defendants worry that they will incur extra costs by having to review both the stenographic and the video depositions of each witness.

[1.] Dual recording seriously diminishes the precedential value of *Perry v. Mohawk Rubber Company*, 63 F.R.D. 603, 607 (D.S.C.1974), *aff'd on other grounds*, 529 F.2d 516 (4th Cir.1976), which premised its refusal to permit video taping of all depositions on the grounds that defendant had not shown a need and a reduction of costs as required by Rule 30(b)(4). Moreover, the court discounts *Perry* for the additional reasons of the length of time which has passed and the technological advances made.

In order to reduce the potential burden on defendants and the Court of allowing plaintiff to take an unlimited number of video depositions, the Court will require plaintiff to designate the video depositions which it intends to use prior to the trial. Plaintiff agrees to identify the witnesses and the portion of testimony for which a video deposition may be offered within forty-five (45) days after the end of discovery. The defendants may then review the stenographic transcript and note objections, agree to their resolution or submit them to the Court so that an edited video deposition may be made. Defendants may then view this copy of the edited video deposition to see whether they object to it on grounds solely relating to the video deposition itself. This procedure adds potential additional work to defense counsel and the Court should we have to review the edited video deposition. There may also be unforeseen risks should plaintiff be less than diligent in attempting to obtain the appearance of witnesses in Court in the hopes that it might be able to use the video depositions. To guard against this, the Court may need to be extra vigilant in reviewing attempts to subpoena and claims of unavailability of witnesses. The Court retains discretion to require use of the stenographic depositions should the attempt to use video depositions be burdensome to either defendants or the Court.

█ The last matter for decision is whether to require that plaintiff hire an independent operator of the video camera. Keeping in mind Rule 30(b)(4) encourages experimentation, the Court will not require an independent operator. With respect to audio recording of depositions, the courts in *Lucas v. Curran, supra;* and *Marlboro Products Corp. v. North Am. Philips Corp.,* 55 F.R.D. 487 (S.D.N.Y.1972), both dispensed with an independent operator even though there was not a backup stenographic deposition. *See also Colonial Times, Inc. v. Gasch, supra,* at 522. In *Marlboro* the court specifically permitted

plaintiff's counsel to run the recording device and have counsel's secretary type the transcript. It held that neither Rule 28(a), Fed.R.Civ.P., which requires depositions to be taken before one authorized to administer oaths and take testimony, or Rule 28(c), which forbids depositions to be taken by counsel of the party, require an independent person to run the recording device. It found the independent person was not a technological necessity and the supposed neutrality of the operator would be a mere illusion in the actual circumstances of an audio deposition.

Rule 28(a) does not disqualify plaintiff's attorney from running the video taping equipment. That rule provides that this person may be appointed by the Court or designated by the parties. There is clearly nothing talismanic about having an official stenographer record the testimony much less to have such person operate the camera. Rule 28(c), which disqualifies persons from taking a deposition if they have an interest in the action, is important for stenographic depositions because the operator interprets what people say into words and puts them on paper. It has markedly less significance when the attorney is merely making a stationary video recording of a deposition which can be easily duplicated and given to all parties. That procedure does not involve any interpretation on his part and correspondingly diminishes concern of a conflict of interest. Finally, an independent operator will not be required because it would greatly increase the cost of the video deposition—it being the major cost factor; and, thus, would significantly curtail use and experimentation with video depositions.[2] *Colonial Times, Inc. v. Gasch, supra.*

The parties have submitted a proposed order governing the video depositions. While it may contain more conditions than necessary, the Court generally accepts it, except for the requirements relating to an independent operator. The approved procedures are as follows:

---

**2.** In this case, requiring an independent operator can hardly be much of an issue in any event because of the additional assurance of having the deposition taken before the stenographer.

1. The deposition shall be timed by means of additional clock (date-time generator), recording hours, minutes and seconds. At all times during the taking of the deposition, the additional read-out shall appear at the bottom or in an appropriate corner of the video screen.

2. The recording should run continuously throughout the deposition from beginning to end but may be suspended during colloquy among counsel, breaks, etc., upon stipulation of all counsel present.

3. The party conducting the deposition shall cause to be prepared a log index which shall include at least the following:

(a) Case name and number;

(b) Names of all counsel and deponents present;

(c) Time, date and location;

(d) Beginning location of direct, cross, redirect, and recross-examination of each witness;

(e) Beginning location of every objection;

(f) Beginning location of exhibit location;

(g) Start and end of each recording session, including recesses.

4. At the start of the deposition, the party taking the deposition shall make a statement on camera of the date, time, and place at which the recording is being made, the title of the case, and the identification of counsel present at the deposition.

5. The person being deposed shall be sworn as a witness on camera by an authorized person.

6. At the deposition the operator shall use the following recording techniques:

(a) The video deposition shall be recorded in color;

(b) One camera shall be used and fixed solely on the witness;

(c) There shall be no unusual lighting in the deposition room solely for the video camera;

(d) During the deposition proceedings the camera shall not be moved;

(e) There shall be no video monitor in the room except for that monitor used by the video operator;

(f) The operator shall use 1/2 inch VHS format video tape.

7. At the conclusion of the deposition, the party taking the deposition shall make a statement on camera that the recording is completed.

8. The party noticing the video deposition shall bear the cost of the video taping which shall not be taxable as costs of the action.

9. The deposition shall be concurrently recorded by a stenographer qualified pursuant to the Federal Rules of Civil Procedure. The stenographic transcript shall be the official record of the deposition and certification of this shall follow the procedures set forth in Rule 30, Fed. R.Civ.P. The use of the video tape record at trial is left entirely in the discretion of the trial judge.

10. The person taking the video deposition shall use one recorder to produce one original video tape which shall be maintained by such person. Any party is entitled to a reproduction of the original tape upon request and payment of the blank tape price.

11. Documents or exhibits used during the deposition must be marked and identified, and shall remain in the custody of the stenographic court reporter. Opposing counsel shall be furnished copies.

12. Notice and subpoena for taking a video deposition shall contain the additional statement that the deposition shall be recorded by audio/visual means.

13. The Court hereby authorizes plaintiff's counsel of record to take the video depositions and directs such persons to record such depositions accurately and in a trustworthy manner in order to truly take and record the evidence presented and all who record do so upon on their oaths as attorneys and officers of this Court.

IT IS THEREFORE ORDERED that plaintiff's motion to video record the depositions in this action is granted on the terms and conditions set forth in the body of this Order.

IT IS FURTHER ORDERED that within forty-five (45) days after the end of discovery, any party wishing to utilize a video deposition in the trial of this action shall identify the deposition and that portion of it which counsel intends to use.