Thomas CAREY, et al.,
Plaintiffs, Appellants,

v.

BAHAMA CRUISE LINES,
Defendant, Appellee.

No. 88–1169.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1988.

Decided Dec. 20, 1988.

Mark J. Albano, with whom Goldman, Albano, Caruso and Fierberg, P.C. was on brief, for appellants.

Richard B. Kydd, with whom Kneeland, Kydd & Handy, was on brief, for appellee.

Before BREYER, Circuit Judge, TIMBERS,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

TORRUELLA, Circuit Judge.

The plaintiffs, a married couple, are residents of Massachusetts. On March 27, 1985, they were passengers aboard a cruise ship, the Bermuda Star, that was anchored off the port of Playa del Carmen, Mexico. The vessel is owned and operated by the defendant, a Cayman Islands corporation whose principal place of business is New York, but which also does business in Massachusetts. Because Playa del Carmen is not a deep water port, passengers must be transported ashore by means of a tender. Passengers move between the vessel and the tender on a gangway, which is designed to slide back and forth on the deck of the Bermuda Star to compensate for the difference in effect the waves have on the vessel and the tender. While alighting from the gangway, Barbara Carey was injured when the gangway slid into her foot.

Plaintiffs filed suit in the United States District Court, District of Massachusetts based on diversity of citizenship jurisdiction. Barbara Carey sought damages for personal injuries resulting from defendant's negligence, whereas Thomas Carey sought damages as a result of the loss of his wife's consortium. The case was tried to a jury on September 8, 1987. During the trial, the district court allowed into evidence deposition testimony of some of the defendant's employees, crewmen aboard the Bermuda Star, because he found that they were unavailable to testify at trial. At the end of trial, the jury found that Barbara Carey was entitled to $14,000 in damages, and that Thomas Carey was entitled to $1,000 in damages. In response to the trial court's special questions on comparative negligence, the jury also found that the defendant was 25% negli-gent, and that Barbara Carey was 75% negligent. The district court thereupon entered judgment for the defendant on Barbara Carey's claim pursuant to the Massachusetts comparative negligence rule that precludes recovery when a plaintiff is more than 50% negligent. The judgment for Thomas Carey was allowed to stand. He was also awarded $205.44 of prejudgment interest.

Plaintiffs moved for a new trial on the grounds that the trial court committed reversible error in admitting into evidence the deposition testimony of the defendant's employees, and for an amendment of the judgment against Barbara Carey. Both motions were denied by the district court. The plaintiff appeals the denial of these motions. We affirm the district court's denial of the motion for a new trial, but reverse its denial of the motion to amend judgment.

I.

The defendant invites us to affirm the district court's order without reaching the merits, on a procedural ground rejected by the district court.[1] The defendant urged the district court not to consider plaintiffs' motions because they were not filed in accordance with Local Rule 17(a)(1) of the District of Massachusetts, which requires every Motion to be accompanied by a memorandum of law. The plaintiffs initially filed only a motion; it was later supplemented by a memorandum of law. The district court excused this violation because plaintiffs met the time limitations under Federal Rule of Civil Procedure 59, which describes how to amend a judgment and how to request a new trial. *See* Memorandum of Nov. 30, 1987, at 2 n. 1. Decisions with respect to extending the time to appeal are normally reversed only if they amount to an abuse of discretion. *See* 9

---

* Of the Second Circuit, sitting by designation.

**1.** An appellee need not cross-appeal "to argue that there are alternative grounds that support the judgment below." *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1248 n. 1 (6th Cir. 1985); *accord United States v. American Railway Express Co.*, 265 U.S. 425, 435–36, 44 S.Ct. 560, 563–64, 68 L.Ed. 1087 (1924) (Brandeis, J.); *Wycoff v. Menke*, 773 F.2d 983, 985 (8th Cir. 1985), *cert. denied*, 475 U.S. 1028, 106 S.Ct. 1230, 89 L.Ed.2d 339 (1986); *In Re Appointment of Independent Counsel*, 766 F.2d 70, 75 (2d Cir.), *cert. denied*, 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985).

Moore's Federal Practice ¶ 204.13[4]; *cf. CIA. Petrolera Caribe, Inc. v. Arco Caribbean Inc.*, 754 F.2d 404, 410 (1st Cir.1985) (stating that district court's refusal to accept late affidavit is reviewable only for abuse of discretion). Because we can not say that the district court abused its discretion, we reject the defendant's argument.

## II.

■■■ Turning to the merits, we first consider the evidentiary issue, keeping in mind that an order denying a motion for a new trial will not be reversed unless the trial court abused its discretion. *See Cazzola v. Codman & Shurtleff, Inc.*, 751 F.2d 53, 54 (1st Cir.1984). The district court did not specify the basis on which he admitted the deposition testimony of the Bermuda Star's crewmen into evidence. We conclude that this hearsay evidence was admissible under Federal Rule of Civil Procedure 32, Use of Depositions in Court Proceedings, which creates an independent exception to the hearsay rule. *See United States v. International Business Machines Corp.*, 90 F.R.D. 377, 384 (S.D.N.Y. 1981); C. Wright & A. Miller, 8 *Federal Practice and Procedure* § 2143, at 452–53 & n. 25. Subparagraph (a)(3) of Rule 32 provides, in pertinent part, that

> The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition.

It is undisputed that the witnesses in question were at sea, more than 100 miles from the place of trial.[2] Consequently, the plaintiffs' only argument is that the absence of the witnesses was procured by the defendant. However, the plaintiffs have offered absolutely no evidence to support the alle-

gation that the Bahama Cruise Lines "actively took steps to keep the deponents from setting foot in the courtroom." *Houser v. Snap–On Tools Corp.*, 202 F.Supp. 181, 189 (D.Md.1962). Under the case law interpreting Rule 32, the mere fact that the deponents are employed by the defendant and that there is an identity of interest between the deponents and their employer is not enough to trigger exclusion because "procuring absence and doing nothing to facilitate presence are quite different things." *Id.; accord Nash v. Heckler*, 108 F.R.D. 376, 377–78 (W.D.N.Y.1985) (stating that, notwithstanding the preference for live testimony, "such exceptions should be allowed to apply absent some compelling reason"); *see also Richmond v. Brooks*, 227 F.2d 490, 493 (2d Cir.1955) (permitting party who was more than 100 miles from trial venue to offer her own deposition as her sole proof at trial in the absence of proof that she had deliberately avoided the trial).

■■■ Even if the deposition testimony was incorrectly admitted into evidence, the plaintiffs have not convinced us that the error was so prejudicial that it mandates a new trial. The fact that the defendants were deposing their own witnesses, who were sailors, indicated that there was a strong likelihood that these depositions would be introduced into evidence. *See Nash*, 108 F.R.D. at 378. The plaintiffs' attorneys should have realized that these depositions might be used at trial, and framed their questions accordingly. To the extent that they believed it was critical to capture the demeanor and appearance of the witnesses for the jury, they could have videotaped the depositions. *See generally* F.R.Civ.P. 30(b)(4); *Rice's Toyota World, Inc. v. Southeast Toyota Distributors, Inc.*, 114 F.R.D. 647, 649, 650 (M.D.N.C. 1987); 4A *Moore's Federal Practice* ¶ 30.57[14.2]. Under the circumstances of this case, we are skeptical about the plain-

---

**2.** The admissibility of depositions under the 100 mile provision of Rule 32 is not conditioned upon the court's inability to subpoena the deponent. *See United States v. Int'l Business Machines Corp.*, 90 F.R.D. 377, 380 (S.D.N.Y.1981). In this respect, Rule 32(a)(3)(B) is more permis-

sive than Federal Rule of Evidence 804(a)(5), which requires the party seeking to admit the deposition testimony to show that it was unable to procure the attendance of the defendant through "process or other reasonable means."

tiffs' retrospective claims of prejudice, and do not believe that the district court abused its discretion. Accordingly, we affirm its order denying the plaintiffs' motion for a new trial based on the admission of the deposition testimony.

### III.

We now turn to the choice-of-law issues. Plaintiffs claim that the judgment should be amended to award Barbara Carey $3,500 because federal maritime law, not Massachusetts law, governs this case. Both parties agree that the only issue affected by this choice is the amount by which the jury's $14,000 award to Barbara Carey should be reduced for her comparative negligence. Both parties also agree that under maritime law, a plaintiff's negligence is considered only in mitigation of damages. *See United States v. Reliable Transfer Co.*, 421 U.S. 397, 407, 95 S.Ct. 1708, 1713, 44 L.Ed.2d 251 (1975); *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 629, 79 S.Ct. 406, 409, 3 L.Ed.2d 550 (1959); *see also Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 5–6 (1st Cir.) (involving a similar claim), *cert. dismissed*, 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983). Thus, both parties agree that under maritime law, because the jury found her 75% negligent, Barbara Carey would be entitled to a judgment of 25% of $14,000, or $3,500. The dispute, therefore, is over the narrow issue of what law should govern the resolution of this case.

The plaintiffs admit that they invoked federal jurisdiction on the basis of diversity of citizenship. They argue, however, that the concept of subject matter jurisdiction should not be confused with substantive law. Because the underlying tort occurred on navigable waters, they claim it was a maritime tort. Therefore, they argue, maritime law governs the case even though jurisdiction was obtained through diversity of citizenship. The plaintiffs emphasize that they did not intend to, nor could they, waive what they claim is a constitutional requirement—that maritime law provides the substantive rule of decision in maritime cases.

As a threshold matter, we note that despite the fact that the tort took place in Mexican territorial waters aboard a ship owned by a Cayman Islands corporation, there was no discussion of the relevance of foreign law in the proceedings below. Both litigants as well as the district court seem to have assumed that United States law governs the adjudication of this tort, without analyzing the factors that normally influence the choice of law decision in maritime tort cases (in fact, the record below does not even identify the country in which the Bermuda Star was registered). *See Lauritzen v. Larsen*, 345 U.S. 571, 583–93, 73 S.Ct. 921, 928–33, 97 L.Ed. 1254 (1953).

The obligation of a federal court to require the application of foreign law appears to be an issue of first impression in this circuit. Other circuits have held, without exception, that a federal court has no such obligation. *See generally* Restatement (Second) of the Conflict of Laws § 136, comment h, Reporter's Note, at 381–83 (summarizing case law). They have noted that Federal Rule of Civil Procedure 44.1 empowers a federal court to determine foreign law on its own, but does not oblige it do so. *See Commercial Insurance Co. v. Pacific–Peru Construction Corp.*, 558 F.2d 948, 952 (9th Cir.1977); *Bartsch v. Metro–Goldwyn–Mayer, Inc.*, 391 F.2d 150, 155 n. 3 (2d Cir.) (Friendly, J.), *cert. denied* 393 U.S. 826, 89 S.Ct. 86, 21 L.Ed.2d 96 (1968); *see also* Miller, *Federal Rule 44.1 and the "Fact" Approach to Determining Foreign Law: Death Knell for a Die-hard Doctrine*, 65 Mich.L.Rev. 613, 660 (1967) (stating that Rule 44.1 does not oblige a court to examine foreign law on its own). These courts have held that by failing to give the requisite notice, the parties have waived their right to the application of any law other than that of the forum. *See, e.g., Clarkson Co. Ltd. v. Shaheen*, 660 F.2d 506, 512 n. 4 (2d Cir.1981), *cert. denied*, 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982). Alternatively, some courts infer from the litigants' silence that the law of the foreign sovereign is the same as that of the forum state. *See, e.g., Walter v. Netherlands Mead, N.V.*, 514 F.2d 1130, 1137 n.

14 (3d Cir.), *cert. denied,* 423 U.S. 869, 96 S.Ct. 133, 46 L.Ed.2d 99 (1975).

We concur in general in the judgment of our sister circuits. By their silence, the litigants' consent to having their dispute resolved according to the law of the forum. This arrangement is not unwelcome from the court's perspective because it is spared a complicated international choice-of-law problem and can apply law with which it is more familiar. We do not see any harm in a court deferring to the litigants in these circumstances.

We add, however, the following caveats. Deference is appropriate provided that (a) the forum state bears a reasonable relationship to the dispute, and (b) the litigants are not conspiring to avoid the policies of any other sovereign whose laws might otherwise apply to the dispute. The first caveat stems from due process concerns. *See Home Insurance Co. v. Dick,* 281 U.S. 397, 407–11, 50 S.Ct. 338, 341–42, 74 L.Ed. 926 (1930) (Brandeis, J.); *Miller, supra,* at 694 n. 313. A court should not apply forum law if the forum "has no significant contact, or significant aggregation of contacts, ... with the parties and the occurence or transaction." *Allstate Insurance Co. v. Hague,* 449 U.S. 302, 308, 101 S.Ct. 633, 638, 66 L.Ed.2d 521 (1981) (plurality opinion) (footnote omitted).[3] The second caveat seeks to prevent the litigants from exploiting the forum's reluctance to delve into foreign law to escape a foreign sovereign's policy interests. *Cf. Siegelman v. Cunard White Star Ltd.,* 221 F.2d 189, 194–96 (2d Cir.1955) (Harlan, J.) (articulating a similar rule with respect to explicit contractual agreements between parties specifying the jurisdiction whose laws would govern disputes arising under the contract).

█ Applying the rule to this case, we find that the United States bears a reasonable relationship to this dispute. Both the plaintiffs are United States citizens, and the defendant's principal place of business is in New York. We also find no intention to evade the policies of any foreign sovereign. Accordingly, the trial court was justified in deferring to the litigants' desire to have United States law govern the resolution of their dispute.

█ Having resolved the international choice of law issue, we return to the federalism problem that the litigants did raise: should maritime law or Massachusetts law govern this dispute? To begin, we agree with the plaintiffs that the source of subject matter jurisdiction is not always dispositive of the substantive law that governs the case. *See Austin,* 705 F.2d at 8 n. 3. The mere fact that the plaintiffs invoked the diversity of citizenship jurisdiction of the district court does not preclude the application of maritime law.

█ The district court denied the plaintiffs' motion to amend judgment because, although plaintiffs had the right under Federal Rule of Civil Procedure 9(h) to have federal admiralty law govern this case, they failed to give the notice required under that Rule. *See* Order of November 30, 1987, at 2. We disagree. Rule 9(h) is a purely procedural provision. Enacted after the merger of law and admiralty jurisdictions, it permits a plaintiff whose claim is cognizable under either jurisdiction to identify his claim as an admiralty claim to obtain certain procedural benefits traditionally available under admiralty jurisdiction. *See* Fed.R.Civ.P. 9(h) (permitting plaintiff to identify his claim as a maritime claim "for purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims"). Rule 9(h) does not authorize a plaintiff to choose the substantive law that applies to his claim.

█ The district court also believed it had the discretion to apply either maritime law or Massachusetts law to resolve the dispute because it had "concurrent jurisdiction" over the claim. *See* Order of November 30, 1987, at 3. This conclusion was based on the district court's assumption that the claim was not uniquely mari-

---

**3.** The due process inquiry focuses on two concerns: arbitrariness and fundamental unfairness. *See Allstate Insurance,* 449 U.S. at 308, 101 S.Ct. at 637 (plurality opinion). The first caveat will usually not be triggered by fear of fundamental unfairness because the litigants are in a better position than the trial court to make that assessment.

time [4]—i.e., that it was not the type of claim over which there would have been exclusive admiralty jurisdiction before the Constitution was enacted. *See* G. Gilmore & C. Black, *The Law of Admiralty* § 1–13 (2d ed. 1975). We disagree with this reasoning. The argument that "the Constitution does not, *proprio vigore*, impose the maritime law upon the States except to the extent that the admiralty jurisdiction was exclusive of the courts of common law before the Constitution" and that "Congress ... has from the beginning left the state courts at liberty to apply their own systems of law in those cases where prior to the Constitution they had concurrent jurisdiction with the admiralty," *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 251, 37 S.Ct. 524, 543, 61 L.Ed. 1086 (1917) (Pitney, J., dissenting), was explicitly rejected by the Supreme Court, *see id.* at 215–16, 37 S.Ct. at 528–29. Although the Supreme Court has steadily narrowed *Jensen*, *see Kossick v. United Fruit Co.*, 365 U.S. 731, 743, 81 S.Ct. 886, 894, 6 L.Ed.2d 56 (1961) (Frankfurter, J., dissenting), and no longer construes the Admiralty Clause as requiring "rigid national uniformity in maritime legislation," *Maryland Casualty Co. v. Cushing*, 347 U.S. 409, 429, 74 S.Ct. 608, 618, 98 L.Ed. 806 (1954) (Black, J., dissenting), the Admiralty Clause still prohibits state attempts "to modify or displace essential features of the substantive maritime law." *Id.; see, e.g., East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 864, 106 S.Ct. 2295, 2298, 90 L.Ed.2d 865 (1986); *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3 L.Ed.2d 550 (1959); *see also* G. Gilmore & C. Black, *The Law of Admiralty* § 1–17, at 48 (2d ed. 1975) ("[S]tate legislation is clearly invalid where it actually conflicts with the established general maritime law...."); Currie, *Federalism and the Admiralty: "The Devil's Own Mess"*, 1960 Sup.Ct.Rev. 158, 181–82, 220 (same).

Although this rule ordinarily requires a delicate accommodation of federal and state interests, *see, e.g., Kossick*, 365 U.S. at 738–42, 81 S.Ct. at 891–94; *see* Currie, *supra*, at 178; Laughlin, *Choice of Law in the Federal Admiralty Court*, 10 J. Maritime L. & Com., 165, 184 (1979), its application in this particular case is straightforward. One of the essential and longstanding features of substantive admiralty law is that contributory negligence can be considered only in mitigation of damages. *See United States v. Reliable Transfer Co.*, 421 U.S. 397, 407, 95 S.Ct. 1708, 1713, 44 L.Ed.2d 251 (1975); *Kermarec*, 358 U.S. at 629, 79 S.Ct. at 409; *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 408–09, 74 S.Ct. 202, 204–05, 98 L.Ed. 143 (1953). Contrary rules under which contributory negligence wholly bars an injured person from recovery are "completely incompatible" with modern admiralty practice. *Pope & Talbot, Inc.*, 346 U.S. at 409, 74 S.Ct. at 204. It is true that the Massachusetts comparative negligence rule bars a plaintiff from recovery only if her comparative negligence exceeds 50%, but it is nonetheless incompatible with the longstanding maritime law rule. We therefore hold that the Admiralty Clause prevented the district court from applying the Massachusetts comparative negligence rule to the

---

**4.** The district court opinion assumes that the tort was maritime in nature. We conclude, based on the following analysis, that this assumption was justified. For a tort to be considered maritime, it must meet two tests: the situs of the tort must be maritime (the location test) and the tort must bear a significant relationship to traditional maritime activity (the nexus test). *See Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 673, 102 S.Ct. 2654, 2657, 73 L.Ed.2d 300 (1982); *Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 8–9 (1st Cir.), *cert. dismissed*, 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983). The location test was met in this case because the tort took place on a vessel. The nexus test focuses on four factors: the function and role of the parties, the types of vehicles and instrumentalities involved, the causation and type of injury, and traditional concepts of the role of admiralty law. *See Drake v. Raymark Industries, Inc.*, 772 F.2d 1007, 1016 (1st Cir.1985), *cert. denied sub nom. Raymark Industries, Inc. v. Bath Iron Works, Corp.*, 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986). We do not need to analyze each factor in detail to conclude that this tort has a significant relationship to maritime activity. We believe an injury to a cruise ship passenger caused by a sliding gangway that connected the cruise ship to a tender is a uniquely maritime injury. There should be a uniform maritime rule specifying the respective responsibilities of crewmembers and passengers in such situations.

jury verdict. This case involves a maritime tort; the court should have applied the maritime rule under which the plaintiff's comparative negligence only mitigates her damages.[5] Under the maritime rule, Barbara Carey is entitled to a judgment of $3,500.[6] The case is *remanded* to the district court so that it can amend its judgment in accordance with our opinion.

5. The district court also suggested that because the plaintiffs had requested or at least consented to the application of Massachusetts law, they were estopped from seeking the application of maritime law after the verdict had been announced. *See* Memorandum of October 28, 1987, at 1. The plaintiffs claim that they never requested or consented to the application of Massachusetts law. The argument is moot, however, because in these circumstances the plaintiff does not have the power to choose "whether the defendant's liability shall be measured by common-law standards rather than those of the maritime law." *Chelentis v. Lukenbach S.S. Co.*, 247 U.S. 372, 384, 38 S.Ct. 501, 504, 62 L.Ed. 1171 (1918); *accord Moore-*

*McCormack Lines v. Amirault*, 202 F.2d 893, 896–97 (1st Cir.1953).

6. No prejudgment interest can be awarded to Barbara Carey. Under maritime law, the decision to award prejudgment interest is solely within the province of the jury. *See Scola v. Boat Frances, R., Inc.*, 618 F.2d 147, 150 (1st Cir.1980); *Robinson v. Pocahontas, Inc.*, 477 F.2d 1048, 1052–53 (1st Cir.1973). In this case, Barbara Carey failed to request a jury instruction regarding prejudgment interest, and is therefore precluded from receiving it. The district court did award Thomas Carey $205.44 of prejudgment interest, but the defendant has not cross-appealed that award.