Ella SOLOMAN and Jerry Soloman,
Appellants–Plaintiffs,

v.

BLUE CHIP CASINO, INC.,
Appellees–Defendant.

Gail Keane, Appellant–Plaintiff,

v.

Blue Chip Casino, Inc., Appellee–
Defendant.

No. 46A03–0202–CV–48.

Court of Appeals of Indiana.

July 31, 2002.

Rehearing Denied Sept. 18, 2002.

Virginia M. Keating, Michigan City, IN, Stevan C. Dittman, New Orleans, LA, Attorneys for Appellants.

Steven B. Belgrade, Richard P. Girzadas, Chicago, IL, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Plaintiffs–Appellants Ella and Jerry Soloman (collectively, "Soloman") and Plaintiff–Appellant Gail Keane ("Keane") filed tort actions against Blue Chip Casino, Inc. ("Blue Chip"). The trial court dismissed both actions, and the parties filed separate appeals. The appeals have been consolidated by order of this court, and where appropriate we refer to the parties collectively as "the Plaintiffs."

We affirm.

### ISSUE

The Plaintiffs raise one issue for our review; however, because the issue encompasses several sub-issues we renumber the issues and state them as:

I. Whether, under the evidence in the record, the trial court erred in dismissing the Plaintiffs' claims on the basis that the court lacked subject matter jurisdiction.

II. Whether, in view of the United States Coast Guard's exercise of authority over the Blue Chip casino boat, the trial court erred in dismissing the Plaintiffs' claims on the basis that the court lacked subject matter jurisdiction.

III. Whether the trial court erred in not finding that Blue Chip was estopped from claiming that it was not located in navigable waters.

### FACTS AND PROCEDURAL HISTORY

Blue Chip is a commercial enterprise engaged in offshore gaming, and it owns a casino boat that anchors at Michigan City, Indiana. Plaintiff Ella Soloman was employed by Blue Chip, and on October 19, 1997, while executing her duties as a slot representative, Ella allegedly suffered injuries in the course of moving large quantities of coins or tokens on Blue Chip's casino boat.[1] Plaintiff Keane was also employed by Blue Chip, and on January 24, 1998, while executing her duties as a table games specialist, Keane allegedly suffered injuries in a fall down a stairway.

The Plaintiffs filed complaints against Blue Chip pursuant to the Federal Jones Act, alleging that Blue Chip's negligence was the direct and proximate cause of their injuries. Blue Chip filed Indiana Trial Rule 12(B)(1) motions to dismiss the complaints on the basis that the trial court lacked subject matter jurisdiction. The trial court granted the motions, and the Plaintiffs now appeal.

### STANDARD OF REVIEW

Our standard of review of a trial court's dismissal for lack of subject matter jurisdiction under T.R. 12(B)(1) is dictated by the trial court's actions. *GKN Co. v. Magness,* 744 N.E.2d 397, 401 (Ind.2001). We review a trial court's ruling on a motion to dismiss under a clearly erroneous standard if the trial court has issued findings of fact and conclusions of law after an evidentiary hearing. *Id.* However, we review de novo a trial court's ruling on a motion to dismiss when (1) the facts are not in dispute, (2) the facts are in dispute and the trial court ruled on a paper record without conducting an evidentiary hearing, and/or (3) the facts are not in dispute but the parties disagree as to the inferences to be drawn therefrom. *Id.*

The facts presented to the trial court, by way of an affidavit from the

---

**1.** Jerry Soloman's claim is derivitative of Ella's claim.

Captain of the casino boat and fifteen photographs of the casino boat and its immediate environs, are not disputed. The parties sharply disagree, however, as to the inferences to be drawn from these items of evidence. Accordingly, we will apply a de novo standard in reviewing the trial court's dismissal order. In so doing, we will affirm the dismissal on any legal theory the evidence of record supports. *See GKN, id.*

## DISCUSSION AND DECISION

### I. "NAVIGABILITY" AS IT PERTAINS TO THE EVIDENCE ON RECORD

■ The Jones Act allows a seaman who suffers injury in the course of her employment to bring an action for damages against her employer.[2] 46 U.S.C. § 688. Thus, if an employee is a seaman, she is not barred by the exclusivity provision in the Indiana Worker's Compensation Act from directly bringing suit against her employer. *Id.* In order to qualify as a seaman under the Jones Act, a plaintiff must show that her duties contributed to the function of a vessel or to the accomplishment of the vessel's mission. *McDermott International, Inc. v. Wilander,* 498 U.S. 337, 355, 111 S.Ct. 807, 813, 112 L.Ed.2d 866 (1991). Although the requirement is not expressly stated in the Act, the United States Supreme Court "has long required that the injury occur through the employee's relationship to a vessel on a *navigable* body of water." *Reeves v. Mobile Dredging & Pumping Co.,* 26 F.3d 1247, 1253 (3d Cir.1994) (emphasis in original) (citing *Swanson v. Marra Brothers,* 328 U.S. 1, 66 S.Ct. 869, 871, 90 L.Ed. 1045 (1946); *McDermott,* 111 S.Ct. at 817).

■ Here, the trial court determined that the Plaintiffs failed to show that Blue Chip's casino boat was located on navigable waters. The trial court thus concluded that the Plaintiffs were not "seamen" under the Jones Act and that they could not file a direct action against Blue Chip under the Act. Accordingly, the trial court dismissed the Plaintiffs' complaints for lack of subject matter jurisdiction under the exclusivity provision of the Worker's Compensation Act. The Plaintiffs contend that the trial court's dismissals of their complaints were improper because the trial court erred in concluding that the Blue Chip casino boat was on a non-navigable body of water.

In determining whether a body of water is "navigable," a number of courts have applied the definition first articulated in *The Daniel Ball,* 10 Wall. 557, 77 U.S. 557, 19 L.Ed. 999 (1870). In that case pertaining to the navigability of a river, the court stated:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used or are susceptible of being used in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the

---

**2.** The general purpose of the Jones Act is to "provide heightened legal protection to seamen injured in the course of employment because seamen are exposed to the 'peril of the sea.'" *Grobe v. Hollywood Casino–Auro-* ra, Inc., 325 Ill.App.3d 710, 259 Ill.Dec. 674, 759 N.E.2d 154, 158 (2001) (citing G. Gilmore & C. Black, Law of Admiralty § 6–21, at 328–29 (2d ed.1975)).

customary modes in which such commerce is conducted by water. 77 U.S. at 563. This definition was subsequently applied to all bodies of water. *In Re Boyer*, 109 U.S. 629, 3 S.Ct. 434, 435, 27 L.Ed. 1056 (1884). The definition was succinctly stated for purposes of the Jones Act in *Reeves*, where the court noted that a body of water is navigable "if it is one that, by itself or by uniting with other waterways, forms a continuous highway capable of sustaining interstate or foreign commerce."

Under the aforementioned definition, a lake which was "man-made," "landlocked," "entirely within the borders of the Commonwealth of Pennsylvania," and with "no waterways connecting it to any other state," was "non-navigable for purposes of federal jurisdiction." *Id.* Similarly, a river upon which a dam was built that prevented the river from being used as an artery of interstate commerce was non-navigable. *Adams v. Montana Power Co.*, 528 F.2d 437, 440–41 (9th Cir.1975). Also, a portion of a river where interstate commerce was prevented by rapids, falls, and artificial dams was non-navigable, even though those portions of the river that formed a continuous highway for interstate commerce were navigable. *LeBlanc v. Cleveland*, 198 F.3d 353, 357–59 (2d Cir.1999). Furthermore, the portion of a river rendered impassable for purposes of interstate commerce by a bridge and a dam was non-navigable under the Jones Act, even though other portions of the same river were navigable. *Weaver v. Hollywood Casino–Aurora, Inc.*, 255 F.3d 379 (7th Cir. 2001) (remanding to the district court for a determination of whether the injured employee "was employed on a boat with the requisite relationship to navigable waters for purposes of the Jones Act").

The record before us in the present case discloses that the Blue Chip casino boat is located in a small, man-made, rectangular area of water that was dug out of dry land connected to Trail Creek by a narrow and shallow opening. A commercial vessel leaving this area would progress to the presumably deeper waters of Trail Creek. Trail Creek is connected to Lake Michigan, a body of water that allows maritime vessels to reach other states.

The key consideration is whether any commercial vessels could proceed from the aforementioned area into Trail Creek and then into Lake Michigan. The only evidence in the record is that no vessels engaged in interstate commerce can pass through the opening into Trail Creek. The opening is too narrow, and the water is too shallow (2½ feet), to allow such passage. As the trial court concluded, "due to the conditions of this body of water and the inability to gain access to Trail Creek or beyond, the portion of water at issue would be incapable of allowing passage of any vessels designed for commerce." Soloman App. at 5–6. Under the evidence before us, we cannot conclude that the area in which Blue Chip's casino boat is located is united with other waterways in a manner which forms a continuous highway capable of sustaining interstate commerce.

The Plaintiffs make much of a deposition statement by the Blue Chip casino boat's captain that the aforementioned area is "part of Trail Creek." After reviewing the trial court's chronological case summary, the parties' appendices, and the parties' briefs, we see no indication that the deposition was made part of the record below. Accordingly, we cannot consider the deposition in making our determination. Furthermore, even if we found that the area is "part of" Trail Creek, the Plaintiffs would not prevail. This part of Trail Creek is impassable for interstate commerce, and would not be "navigable" under the Jones Act. In addition, even though there is evidence of some commerce on Trail Creek, i.e. a marina servicing pleasure craft, there

is no evidence to show that Trail Creek does or can act as a highway for commercial vessels in interstate commerce.

The Plaintiffs rely on evidence that pleasure craft can navigate in close proximity of the entrance to the area in which Blue Chip's casino boat is located, that a "john boat" can traverse the shallow entrance, and that a marina housing pleasure boats is located on a nearby portion of Trail Creek. The Plaintiffs argue that the presence of these vessels is evidence of "navigability" under the Jones Act. The Plaintiffs cite *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982) and related cases for the proposition that the presence of pleasure boats is sufficient to establish admiralty jurisdiction.

■ We disagree for two reasons. First, navigability requires that "the body of water be capable of supporting *commercial* maritime activity. It is irrelevant that the body of water is capable of supporting, non-commercial maritime activity." *LeBlanc*, 198 F.3d at 360 (emphasis in original). Second, the portions of *Foremost* and related cases relied on by the Plaintiffs refer to the test for determining "traditional maritime activity," a consideration which becomes relevant only after a determination that an injury has occurred on a navigable waterway. This test is not relevant where, as here, the applicable waterway is non-navigable.

## II. "NAVIGABILITY" AS IT PERTAINS TO COAST GUARD AUTHORITY

■ The Plaintiffs point to the United States Coast Guard's exercise of authority over the Blue Chip casino boat as additional evidence that the casino boat is connected with navigable waters. The Plaintiffs reason that there must be Jones Act jurisdiction because the Coast Guard's authority is limited to "navigable" waters.[3]

■ The interchangeable terms "navigable" and "navigability" do not have a fixed meaning, and it is important to ascertain the purpose for which the terms are being used. *Kaiser Aetna v. United States*, 444 U.S. 164, 100 S.Ct. 383, 388, 62 L.Ed.2d 332 (1979). For instance, the term "navigability" has been used to define four separate and distinct concepts: (1) the delineation of the boundaries of navigational servitudes; (2) the scope of Congress' regulatory authority under the Commerce Clause; (3) the extent of the authority of the Army Corps of Engineers under the Rivers and Harbors Appropriation Act of 1899; and (4) the limits of jurisdiction of the federal courts conferred by the United States Constitution. *Id.* at 388–89. "Navigability" under the Commerce Clause is broader than the same concept under general admiralty jurisdiction. *Adams*, 528 F.2d at 440. While Commerce Clause jurisdiction is not affected by the construction of man-made obstacles upon a previously navigable body of water, the construction of such obstacles that eliminate commercial maritime activity also eliminate general admiralty jurisdiction. *Id.*

The definition of "navigable waters" for Coast Guard jurisdiction refers to waters that "are or have been used, or are or have been susceptible for use, by themselves or

**3.** The Plaintiffs cite to the deposition of the Blue Chip casino boat's captain to establish the specific manner in which the Coast Guard exercises authority over the boat. Because the deposition is not part of the evidence below, it cannot be part of the evidence on appeal. However, Blue Chip appears to concede the general exercise of the Coast Guard's authority to inspect and certify. Thus, we address this issue with the understanding that the Coast Guard does possess some kind of authority over the casino boat.

in connection with other waters, as highways for substantial interstate or foreign commerce, notwithstanding natural or man-made obstructions that require portage...." 33 CFR § 1.05–25. This definition is broader than the definition of general admiralty jurisdiction under the Jones Act, and the Coast Guard may exercise its authority even though the waters related to Blue Chip's casino boat are non-navigable under the Jones Act. Thus, we cannot agree with the Plaintiffs that the Coast Guard's exercise of authority over the casino boat leads inexorably to the conclusion that the boat is in navigable waters for purposes of the Jones Act. *See Chapman v. United States*, 575 F.2d 147, 151 (7th Cir.1978) (holding that even if a body of water was navigable for purposes of the Commerce Clause, it was not navigable for admiralty jurisdiction purposes where the body of water was not susceptible of commercial navigation).

### III. ESTOPPEL

■ The Plaintiffs contend that the trial court erred in not determining that Blue Chip, in claiming that it was located on navigable waters for purposes of the Indiana gaming statutes, was estopped from claiming that the same waters were non-navigable for general admiralty and Jones Act purposes.[4] The Plaintiffs note that the Indiana gaming statutes contemplate that a casino boat will be located on navigable waters.

Ind.Code § 4–33–4–13(a) authorizes the Indiana Gaming Commission, after consulting with the United States Army Corps of Engineers, to determine which Indiana waterways are navigable "for purposes of this article [Article 33: Riverboat Gambling]" and to determine which navigable waterways are suitable for operation of riverboats under the same article. Ind.

Code § 4–33–4–13(b)(1) requires the Commission to "[o]btain any required approvals from the United States Army Corps of Engineers for the operation of riverboats on those waterways."

As we stated in our discussion of Issue II, the term "navigable" must be interpreted in its context. As we also stated, the United States Supreme Court has recognized that the concepts of "navigability" as pertaining to the Army Corps of Engineers and general admiralty jurisdiction are "separate and distinct." *Kaiser*, 100 S.Ct. at 388. There is no evidence before us that the definition of "navigable waterways" under our gaming statutes is coextensive with the definition of the same term under general admiralty jurisdiction or the Jones Act, and we see no reason why Blue Chip should be estopped from arguing that its casino boat is located on non-navigable waters for purposes of the Jones Act.

■ In addition, we note that estoppel is a judicial doctrine sounding in equity, and although "variously defined," it is "a concept by which one's own acts or conduct prevents the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct." *Brown v. Branch*, 758 N.E.2d 48, 51 (Ind. 2001). We see no detrimental reliance by the Plaintiffs here.

### CONCLUSION

The trial court did not err in dismissing the Plaintiffs' claims. Accordingly, we affirm.

BARNES and KIRSCH, JJ., concur.

---

4. We note that the Plaintiffs' briefs are silent as to what theory of estoppel is appropriate here. We cannot ascertain what theory is being asserted from the cases cited by the Plaintiffs, as the facts of the cited cases are dissimilar from the facts of the present case.