**In the Matter of the Petition of Lisa M. STRAHLE, as Owner of Vessels 1995 Polaris PLE53010E595 and 1994 Polaris PLE00427L394, for Exoneration from or Limitation of Liability, Petitioner.**

**No. 4:02MC3.**

United States District Court,
N.D. Indiana,
Hammond Division.

March 4, 2003.

Richard A. Smikle, Jeremy A. Klotz, Ice Miller, Indianapolis, IN, Steven Goldman, Goldman and Hellman, Fort Lauderdale, FL, for petitioner.

Bryan L. Ciyou, Gannon and Ciyou, Indianapolis, IN, Alan D. Wilson, McGarvey, Trauring & Wilson, Kokomo, IN, William E. Emerick, Trenten D. Klingerman, Stuart and Branigin, Lafayette, IN, for claimants.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This matter is before the Court on a motion by Barbara J. Lumley, individually and as custodial parent of Tyler Ellsworth and Robert R. Ellsworth, individually and as parent of Tyler Ellsworth,("Respondents"), pursuant to Federal Rule of Civil Procedure 12(b)(1) for an order dismissing

this action for lack of subject matter jurisdiction.

## I. BACKGROUND

This action arises out of an accident in which Tyler Ellsworth was stuck and killed by a Polaris water craft, Jet Ski, operated by Brian W. Wolfe on the Wabash River, Flint Creek, along the Tippecanoe and Fountain County Line in Indiana. The Plaintiff, Barbara J. Lumley, as natural mother and custodial parent of Tyler Ellsworth, initiated a wrongful death action against Petitioner, Lisa M. Strahle and Brian W. Wolfe in the Tippecanoe County Court on August 19, 2002. Mr. Ellsworth, Tyler Ellsworth's natural father, was named in the state court action pursuant to I.C. § 34–23–2–1 in order to protect his interests.

On or about October 11, 2002, Lisa M. Strahle ("Petitioner") filed a petition for Exoneration From or Limitation of Liability in the United States District Court for the Northern District of Indiana, Hammond Division at Lafayette. In the Petition, Lisa M. Strahle alleges the incident occurred in or about the navigable waters of the United States bearing the requisite connection to maritime activity such that this Court has subject matter jurisdiction over the Petition. The Respondents contend that this underlying wrongful death incident did not occur on navigable waters and that therefore the Petition for Exoneration from or Limitation of Liability under 46 U.S.C. § 183 should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II. STANDARD OF REVIEW

■ Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a case will be dismissed if the court lacks the statutory authority to hear and decide the dispute. Under 28 U.S.C. § 1331 a case arises under federal law only if, from face of the plaintiff's complaint, it is apparent that plaintiff's cause of action was created by federal law. *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090 (7th Cir. 1994), cert. denied 512 U.S. 1222, 114 S.Ct. 2711, 129 L.Ed.2d 838 (1994). For purposes of determining original jurisdiction of a federal court, a case "arises under" federal law when an essential element of the plaintiff's cause of action depends for its resolution upon validity, construction or effect of federal law. *Roberts Distributor, Inc. v. Federal Exp. Corp.,* 917 F.Supp. 630 (S.D.Ind.1996).

## III. JURISDICTION IN ADMIRALTY

■ Article III, section 2 of the United States Constitution provides that "the judicial power shall extend ... to all cases of admiralty and maritime jurisdiction." *Great Lakes Dredge & Dock Co. v. City of Chicago,* 3 F.3d 225, 227 (7th Cir.1993). In order to invoke admiralty jurisdiction, a Court must find that (1) the incident occurred on the navigable waters of the United States, (2) the incident posed a potential hazard to maritime commerce, and (3) the activity engaged in was substantially related to traditional maritime activity. *Id.* at 228.

## IV. DISCUSSION

### A. Navigable Waterway

■ The first issue to determine is whether the Wabash River, which is where the incident occurred, is a navigable waterway of the United States and thus subject to this Court's admiralty jurisdiction. In *Weaver v. Hollywood Casino–Aurora, Inc.,* 255 F.3d 379, 382 (7th Cir.2001), the Seventh Circuit cited *The Daniel Ball,* test for navigability stating the following:

> Rivers are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conduct-

ed in customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which commerce is conducted by water.

*Weaver*, quoting *The Daniel Ball*, 10 Wall. 557, 77 U.S. 557, 563, 19 L.Ed. 999 (1870). The key to determining whether a river is navigable is the river's present navigability where the incident occurred. *Great Lakes*, at 229.

### i.  The Wabash River Guide Book

The Respondents argue that Jerry M. Hay, author of the *Wabash River Guide Book* describes the Wabash River as "... the largest non-navigable river in the United States, meaning that it does not have adequate channels for commercial traffic." Mr. Hay based this conclusion on a variety of factors including a dam without locks in Huntington, Indiana, and flood control dams without locks on the Salamonie and Mississinewa Rivers near Wabash, Indiana. Hay also took into account the shallow depth of the Wabash, sandbars, and low passage bridges. The Respondents claim that based on this evidence, the Wabash River is not a navigable waterway and thus there are no grounds for admiralty jurisdiction in this case.

The Petitioner, Lisa M. Strahle, contends that Mr. Hay's Guide Book conclusively establishes the navigability of the Wabash River from West Lafayette, Indiana to its junction with the Ohio river. Petitioner further argues that the assertions that the river is nonnavigable because of the dam at Huntington, Indiana and dams on the Salamonie and Mississi-

newa rivers are irrelevant to the legal question before this Court. These are all far upstream from the point of the alleged accident. The Petitioner points out that the river must only be susceptible to interstate commerce, meaning that interstate travel must only be possible. *See Weaver*. Mr. Hay gives a detailed description of his boating trip from Lafayette, Indiana to Illinois, noting that "... the Wabash River can be a water highway to many places."

■ The Respondents' reliance on Mr. Hay's Guide Book, does establish that a boat can make an interstate trip from Lafayette to the Ohio River. Furthermore, the dams referred to in the Guide Book by Respondents are irrelevant due to the fact that they are upstream from where the incident occurred. There is no evidence of dams or obstructions which would hinder a small craft within the vicinity of where the alleged incident occurred. However, this is not proof that the Wabash River is used as a highway for commerce establishing admiralty jurisdiction. It is irrelevant that the body of water is capable of supporting non-commercial maritime activity. *See Soloman v. Blue Chip Casino, Inc.*, 772 N.E.2d 515, 520 (Ind.Ct.App.2002).

### ii.  The Natural Resources Commission

The Petitioner illustrated that in the 1980's the Natural Resource Commission ("NRC") engaged in extensive research to identify those Indiana waters declared navigable by a court, the legislature, or an administrative agency. According to Mr. Lucas, the Director of the NRC, the research applicable to the Wabash River was consistent with a determination that the river is navigable. Petitioner further contends that a portion of the NRC publication on this issue identifies the counties in which the Wabash River is navigable, which include both Tippecanoe and Foun-

tain, the exact area where the alleged incident occurred.

The Respondents argue that this does not provide evidence that the Wabash River is navigable. They claim that because the NRC does not define navigability and do not specify how the determination was made that such is not evidence of its navigability. The Respondents claim that the NRC does not establish whether the Wabash River is used or is susceptible to use as a highway for commerce and therefore, is not evidence for purposes of invoking admiralty jurisdiction. However, the NRC engaged in extensive research to identify the Indiana waters that were declared navigable by a court, legislature, or an administrative agency. According to the NRC, the research applicable to the Wabash River was consistent with a finding that the river was navigable and that no contrary determination was encountered.

While the NRC's does not state a specific definition, a website publishing the results refers to state and federal precedent as well as applicable statutory language and regulatory standards on which such determinations were based. The NRC's list identifies those Indiana waters declared navigable by a court, legislature, or an administrative agency, which includes the Wabash River. The NRC definition of "navigability" provides:

> (a) "Navigable" means a waterway that has been declared to be navigable or a public highway by one (1) or more of the following:
>
> (1) A court
>
> (2) The Indiana General Assembly
>
> (3) The United States Army Corps of Engineers
>
> (4) The Federal Energy Regulatory Commission
>
> (5) A board of county commissioners under IC 14-29-1-2

> (6) The commission following a completed proceeding under IC 4-21.5.

312 I.A.C. 1-1-24.

The NRC's determination could have been based on any one of these six possible sources. Mr. Lucas stated that those Indiana waters declared navigable by a court, legislature, or an administrative agency, which includes the Wabash River, were identified via the extensive research project. This mean that the Wabash River was declared by one of the six sources as navigable or as a public highway which would permit admiralty jurisdiction.

### iii. The United States Army Corps of Engineers

The Petitioner also contends that the United States Army Corps of Engineers has concluded that the Wabash River is a navigable waterway of the United States. The Respondents again argue that there is no reasonable relation between its definition of navigability and the definition relevant for the invocation of admiralty jurisdiction. Evidence that Army Corps of Engineers considered river and lake navigable waters of the United States, though not controlling, was significant in determining navigability and federal district court's admiralty jurisdiction over tort suit arising from boat's collision with submerged pipe. *See Sanders v. Placid Oil Company,* 861 F.2d 1374 (5th Cir.1988). Arguably the Court's decision cannot rest solely on the conclusion of the United States Army Corps of Engineers, however it can be a significant factor in rendering its decision.

### iv. United States Division of Hydropower Administration and Compliance

Similarly, the Petitioner states that the United States Division of Hydropower Administration and Compliance, ("DHAC") a

division of the Federal Energy Regulatory Commission issued an order finding the Tippecanoe River a navigable waterway of the United States. *Northern Indiana Public Service Company,* 92 FERC p. 62, 258. The DHAC relied upon a navigation report on the Tippecanoe River prepared in February of 2000, which showed that the stream was used for the transportation of persons and property in interstate commerce. *Id.* The Petitioner contends that the finding that the Tippecanoe River is a navigable waterway is further evidence that the Wabash River is a navigable waterway since the Tippecanoe River flows into the larger Wabash River creating a continuous highway of commerce.

The Respondents argue that the DHAC application of the commerce definition of navigable waters in reaching the determination that the Tippecanoe River is navigable, is too broad as to invoke admiralty jurisdiction. In this assertion they rely on facts from a Seventh Circuit case which addressed the commerce clause definition and held that it was much broader than the jurisdictional test of whether waters are used or are susceptible for use in their present state for commercial navigation. *See, Chapman v. United States,* 575 F.2d 147, 151 (7th Cir.1978). However, this case refers to a body of water that use to be susceptible to interstate commerce and was no longer. The argument proposed by the Petitioner is that the Wabash River is presently susceptible to such use. Furthermore the commerce clause definition was applied in determining whether the Tippecanoe Rive was navigable, which took into account past interstate activity as well as present. Today, the Tippecanoe River is used by recreational boaters, demonstrating its suitability for use for the simpler forms of trade in interstate commerce. The evidence shows that the Tippecanoe River is part of a continuous highway suitable for commerce into the Wabash River and Ohio River. *See NIPSCO,* 92 FERC *citing Rochester Gas & Electric Co. v. FPC,* 344 F.2d 594, 596 (2nd Cir.1965).

■ Based on the foregoing evidence of the three agencies, the Wabash River, at the point of the alleged incident, was and is a navigable waterway of the United States.

## B. Potential Hazard to Maritime Commerce/Substantial Relationship to Traditional Maritime Activity

### i. Potential Hazard to Maritime Commerce

■ After a determination is made in regards to the navigability of the waterway, the Court must next determine whether the incident posed a potential hazard to maritime commerce and whether the incident bears a substantial relationship to traditional maritime activity. *Great Lakes,* at 228. The Court should assess the general features of the type of incident involved to determine whether such an activity is likely to disrupt commercial activity. *Weaver* at 385. The key to this analysis is not whether the incident affected maritime commerce, but whether it could do so. *Id.* at 386.

■ The Respondents contend that because this incident did not occur on navigable waters, and that the area in which the incident occurred is not commercially navigable, there is no potential disruption of maritime commerce in the present case. Pleasure boat accidents that occur on waters that are not commercially navigable are not within admiralty jurisdiction. *LeBlanc v. Cleveland,* 198 F.3d 353, 359 (2nd Cir.1999).

However, the Court in *Bodnar v. Hi-Lex Corp.,* 919 F.Supp. 1234 (N.D.Ind. 1996) stated that a collision between a pleasure boat and a water skier in the water has the same potential to disrupt maritime commerce as does a collision be-

tween two pleasure boats, or a fire aboard a yacht in a marina. *See, Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). The Petitioner argues that like *Bodnar,* Tyler Ellsworth was struck by a jet ski while in navigable waters. The Petitioner claims that this incident had the potential to disrupt commercial maritime activity due to the numerous canoe rental establishments and beaches located in the area. Certainly the news of such an accident would cause worry and concern amongst potential customers.

The general features of this type of incident, between a jet ski and a person in navigable waters, involving a death, constitutes such an activity having sufficient potential to disrupt commercial maritime activity.

### ii. Substantial Relationship to Traditional Maritime Activity

Under this test, the Court must ask whether a tortfeasors' activity ... is so closely related to activity traditionally subject to admiralty law, that the reasons for applying special admiralty rules would apply in the case at hand. *Bodnar,* at 1239. In *Bodnar,* one Defendant alleged that the activity giving rise to the incident was negligent navigation of the vessel. The Court in *Bodnar* held that the negligent navigation of a vessel on navigable waters ... has a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction. *Id.* at 1240, citing *Foremost,* 457 U.S. at 674, 102 S.Ct. 2654. Here the Plaintiff specifically alleges that Defendant, Brian W. Wolfe, carelessly, recklessly, and negligently operated a personal water craft causing the alleged injuries to decedent. This falls within the well-established precedent that the incident bore a substantial relationship to traditional maritime activities. *See Bodnar,* 919 F.Supp. at 1241; *Hogan v. Overman,* 767 F.2d 1093

(4th Cir.1985); and *Oliver v. Hardesty,* 745 F.2d 317 (4th Cir.1984).

Based on the fact that the alleged incident occurred on a navigable waterway, posed a potential risk of disrupting maritime activities, and bore a substantial relationship to traditional maritime activities, this Court has admiralty jurisdiction over Petitioners Limitation Petition.

## V. CONCLUSION

Based on the foregoing, the Wabash River is a navigable waterway of the United States and is thus subject to this Court's admiralty jurisdiction. Therefore, the Respondents' motion to dismiss the petition for Exoneration from or Limitation of Liability pursuant to Federal Rule of Civil Procedure 12(b)(1) is **DENIED.** The claimants Barbara J. Lumley and Robert Ellsworth are now ordered to move, make a claim, or respond to the Petitioner's, Lisa M. Strahle, Petition for Exoneration from or Limitation of Liability within fifteen (15) days from the date of this Order.

**IT IS SO ORDERED.**