**In the Matter of The Petition of Gerald A. MEIER, as the Owner of a 1999 20 Foot Crownline Vessel for Exoneration from or Limitation of Liability, Petitioner.**

No. 04–C–0124–C.

United States District Court,
W.D. Wisconsin.

Sept. 29, 2004.

Ann E. Curtiss, for Plaintiffs.

Curtis M. Kirkhuff, Pellino, Rosen, Mowris & Kirkhuff, Mark W. Pernitz, Boardman Law Firm, Madison, WI, Steven E. Goldman, Goldman & Hellman, Brookline, MA, for defendants.

## OPINION AND ORDER

CRABB, Chief Judge.

In this civil action, petitioner Gerald A. Meier, owner of a 1999 twenty-foot Crownline vessel, brought a petition under the Limitation of Vessel Owner's Liability Act, 46 U.S.C.App. § 183(a). Petitioner sought to limit his liability for an accident occurring on the Rock River in Wisconsin that caused the death of a passenger on petitioner's boat. In an order dated July 14, 2004, I granted the motion of Diane Acker, Estate of Robert Acker, Michael Getchell and State Farm Fire & Casualty Company to dismiss the entire case for lack of subject matter jurisdiction. Now before the court is a motion for attorney fees filed by claimants Michael Getchell, State Farm Fire & Casualty Company and Diane Acker, pursuant to Fed.R.Civ.P. 11(c) and Fed.R.Civ.P. 54(d) or, alternatively, pursuant to 28 U.S.C. § 1927 and Fed.R.Civ.P. 59(e). Claimants maintain that petitioner's conduct in pursuing this suit against them was unreasonable, ungrounded in law and multiplied the proceedings unreasonably, meriting an award under Rule 11 or § 1927.

Petitioner filed his petition for limitation of liability in this court, asserting admiralty jurisdiction, after obtaining a stay of the state court proceedings. After he had made the filing, claimants' counsel notified petitioner's counsel that the area of the river where the accident occurred was not a navigable waterway and therefore, petitioner lacked any basis for asserting admiralty jurisdiction and claiming the protection of the Limitation of Liability Act. Petitioner responded that he had looked into the matter further and had decided to continue to pursue his petition in federal court. In claimants' view, both the decision to raise the claims and to continue to pursue them warrant sanctions.

In opposing claimants' motion for attorney fees, petitioner focuses on the reasonableness of his belief that the Rock River could be determined to be navigable at the place where the accident occurred. He contends that his arguments were made in good faith and were legally grounded and that he did not engage in any conduct that would warrant a Fed.R.Civ.P. 11 sanction. Additional-

ly, he says, claimants did not comply with Rule 11's 21–day "safe harbor" period.

I conclude that petitioner's claims were not grounded in fact and that he did not conduct a reasonable investigation to determine whether the facts supported admiralty jurisdiction. Consequently, I will grant claimants' motion and award them a portion of their attorney fees. Petitioner's counsel should have known that the governing law in this circuit required her to discover whether the Rock River was navigable at the specific spot where the accident took place and not whether the river was navigable when viewed in its entirety. It is undisputed that the accident occurred between two dams on the Rock River, yet at the time petitioner opposed claimants' motion to dismiss, he did not seem to know its exact location.

## OPINION

### A. *Rule 11*

#### 1. *Safe harbor requirement*

Before moving for Rule 11(c) sanctions, a party must serve the opposing party with a motion and give him 21 days in which to withdraw the questionable pleading. If the pleading is not withdrawn, the party may file its motion with the court, having satisfied the rule's "safe harbor" requirement.

■ Claimants contend that they served petitioner on April 14, 2004, with a letter listing the jurisdictional problems with petitioner's claims of navigability and privity. Within this same letter, claimants gave warning that they would seek attorney fees pursuant to Rule 11 if petitioner did not dismiss his petition. Petitioner questions whether the letter served to petitioner by claimants satisfies the notice requirement. He notes that Rule 11 calls for service of a "motion."

Although claimants served a letter rather than a formal motion to petitioner, such a letter meets the requirements of Rule 11. In sending a letter to plaintiffs, defendants "complied substantially with Rule 11(c)(1)(A) and are entitled to a decision on the merits of their request for sanctions under Rule 11." *Nisenbaum v. Milwaukee County,* 333 F.3d 804, 808 (7th Cir.2003). Claimants sent their letter more than 21 days before I denied the petition for lack of jurisdiction and more than 21 days before they filed their motion for attorney fees. Because claimants described the specific conduct that they believed was frivolous and unsupported by law and stated that they would file for attorney fees if petitioner did not withdraw his pleading, their letter "complied substantially" with Rule 11.

On April 20, 2004, petitioner responded to claimants' letter, stating that he had researched the matters and would not be dismissing the federal action. Claimants filed their motion to dismiss the next day. In addition to the notice the letter gave him, petitioner had time to withdraw his claims and avoid potential sanctions between April 21, 2004, the date on which claimants submitted their motion to dismiss, and July 16, 2004, the date on which I granted that motion. Thus, claimants satisfied the policy behind the "safe harbor" requirement, which is to give violators an opportunity to withdraw their pleadings to avoid sanctions. Because the letter was the functional equivalent of a motion, differing only in format, and petitioner had ample notice and opportunity to withdraw his petition, I conclude that claimants have substantially complied with Rule 11's safe harbor provision and are entitled to a decision on the merits.

#### 2. *Factual and legal basis for petitioner's submissions*

■ Rule 11 is violated when a party or party's counsel signs a paper that, "after reasonable inquiry, is not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *Burda v. M. Ecker Co.,* 2 F.3d 769, 773–74 (7th Cir.1993). To find a Rule 11 violation, a court must make an objective inquiry to determine whether the petitioner "should have [known] that his position is groundless." *Chicago Newspaper Publishers' Ass'n v. Chicago Web Printing Pressmen's Union No. 7,* 821 F.2d 390, 397 (7th Cir.1987). The inquiry under Rule 11 is objective; there is no need to find that the petitioner acted in bad faith. *National Wrecking Co. v. International*

*Broth. of Teamsters, Local 731,* 990 F.2d 957, 963 (7th Cir.1993).

■ It is well established that "the key to determining whether there are navigable waters is the river's present navigability where the injury transpired." *Weaver v. Hollywood Casino–Aurora,* 255 F.3d 379, 383 (7th Cir.2001) (quoting *Chapman v. United States,* 575 F.2d 147, 149 (7th Cir.1978)). Despite this well settled law, petitioner failed to adduce evidence showing where the collision occurred. In his Response to Motion to Dismiss, petitioner asserted that the incident occurred on a "stretch of the Rock River" and relied on the Army Corps of Engineers' finding that the Rock River as a whole was a navigable waterway of the United States. In an opinion and order dated June 23, 2004, I stayed claimants' motion to dismiss and ordered petitioner to submit evidence regarding the exact location of the collision. Petitioner responded to this order by informing the court that the incident occurred between the Indianford and Jefferson dams.

In contending that he made good faith arguments in favor of navigability, petitioner relies on a recent case decided in the Northern District of Indiana, *Petition of Lisa M. Strahle,* 250 F.Supp.2d 997 (N.D.Ind.2003), as well as a 1975 report conducted by the Army Corps of Engineers. Petitioner quotes a passage from *Strahle* in which the court cited *Weaver,* 255 F.3d at 382, for the proposition that "[r]ivers are navigable in fact when they are used, or are susceptible of being used, . . . as highways for commerce." *Strahle,* 250 F.Supp.2d at 999–1000. He omits the court's statement immediately after this quotation that the main factor in determining navigability is the location of the incident. *Id.* at 1000. In *Strahle,* the petitioner had identified the exact location of the incident. *Id.* at 1000–01. Also, petitioner argues that, in *Strahle,* the court had relied on an Army Corps of Engineers determination that the river at issue was navigable as a whole. However, the court stated that although the Army Corps' assessment was to be accorded some weight, the court's "decision [could] not rest solely on the conclusion of the United States Army Corps of Engineers." *Id.* at 1001. It went on to consider

other evidence relating to the navigability of the river where the accident took place and concluded that the evidence of three agencies showed that "the Wabash River, *at the point of the alleged incident,* was and is a navigable waterway of the United States." *Id.* at 1002 (Emphasis added).

The Notes of the Advisory Committee for Fed.R.Civ.P. 11 suggest that in deciding whether Rule 11 has been violated, the court should take into consideration the extent to which petitioner found some support for his theory, even if only in minority opinions. Petitioner relied exclusively on the opinion of the Army Corps of Engineers that the Rock River is susceptible for use in interstate commerce and ignored well settled law that "navigability" is determined at the exact location of the collision. He cannot claim to have been relying on *Strahle* when the court took pains in that case to point out that it is not enough to rely exclusively on the Army Corps' assessment because navigability is determined at the point of the collision. Consequently, it does not appear that petitioner put forth a theory well grounded in fact or law as Rule 11(b)(2) and (3) requires.

■ "[T]he party advancing a legal theory has the burden of conducting a reasonable investigation of its viability before forcing an opponent to defend the claim." *Land v. Chicago Truck Drivers, Helpers and Warehouse Workers Union,* 25 F.3d 509, 517 (7th Cir.1994). To determine whether petitioner's attorney made a reasonable inquiry into the specific facts of the case, a court must consider:

(1) whether the signer of the documents had sufficient time for investigation; (2) the extent to which the signer had to rely on another for the factual foundation underlying the pleading, motion, or other paper; (3) whether the case was accepted from another attorney; (4) the complexity of the facts and the signer's availability to do a sufficient pre-filing investigation; and (5) whether discovery would have been beneficial to the development of the underlying facts.

*R.K. Harp Inv. Corp. v. McQuade,* 825 F.2d 1101, 1103–04 (7th Cir.1987). In the course of petitioner's research, he should have dis-

covered that navigability is determined at the exact location of the collision and that natural or manmade obstructions in the immediate vicinity of the incident affect determinations of navigability. In addition, petitioner should have known the specific location where the collision occurred. This was a readily ascertainable fact that petitioner could have included in his earlier filings. In addition, after claimants informed petitioner that the collision occurred on a part of the Rock River between the Indianford and Jefferson dams, petitioner should have been able to confirm the location of these dams relative to the collision site.

Rule 11 subjects a party to potential sanctions if the party continues to insist upon a position or argument after it is "no longer tenable." Fed.R.Civ.P. 11, 1993 Amendment Advisory Committees Note. Claimants directed petitioner's attention to the non-navigability of the river at the site where the collision occurred. Nonetheless, petitioner stated that he had looked into the matters raised and had decided to persist in his claims. If petitioner had made a full and complete inquiry into whether his claim was fully grounded in fact and existing law, he would have realized that his position was groundless.

### B. *Attorney Fees*

■ The method for calculating reasonable attorney fees is not precise, but rather is based on the "learned guesses of district court judges." *Evans v. City of Evanston,* 941 F.2d 473, 476–77 (7th Cir.1991). District courts have great discretion is choosing from among different alternative methods. *Id.* at 477. District courts also have broad discretion in setting sanction awards that they believe will serve a deterrent purpose, while at the same time awarding only those fees that result directly from the conduct to be sanctioned. *Divane v. Krull Electric Co.,* 319 F.3d 307, 314 (7th Cir.2003). Claimants State Farm and Getchell have asked for reimbursement of about $8,462 for the fees they incurred, while claimant Acker asks for about $10,750.

■ As petitioner notes, shipowners routinely file petitions under the Limitation Act shortly after claimants file their complaints in state court. *McCarthy Brothers Company/Clark Bridge,* 83 F.3d 821, 826–27 (7th Cir.1996). Given that shipowners have a limited period of time in which to file such petitions after claimants file in state court, I do not find that petitioner violated Rule 11 when he initially filed his petition in reliance on a report indicating that the Rock River is navigable. In this relatively short period of time, it is not necessarily reasonable to expect a petitioner to discover every obstruction that could bear on the question of navigability before filing. However, petitioner did violate Rule 11 later when he ignored governing precedent that holds that rivers are not navigable in areas between two lockless dams, as well as the fact that navigability is determined at the exact location of the collision and not upon whether the waterway is navigable as a whole.

Although neither party addressed the issue whether the sanction should be lodged against petitioner or his counsel or both, I must determine that issue before deciding what an appropriate sanction would be. Rule 11(c)(2)(A) provides that a represented party cannot be sanctioned when the violation is for lack of legal merit. This limitation does not apply when the violation involves a lack of evidentiary support. In this case, the violation involved both legal merit and evidence. However, as the party moving for sanctions, claimants bear the burden of proving that petitioner was responsible for the violation. Claimants have not shown or attempted to show that petitioner withheld or obscured evidence from his lawyer. Thus, petitioner will not be sanctioned.

■ With respect to petitioner's lawyer, the only limitation Rule 11 provides is that the sanction be "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(2). I believe that $3,000 is large enough to serve its deterrent purpose while sanctioning only that conduct of counsel that violated Rule 11. Accordingly, petitioner's counsel will be ordered to pay reasonable attorney fees incurred in response to this lawsuit in the amount of $3,000.

### C. *28 U.S.C. § 1927*

Under 28 U.S.C. § 1927, an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." I need not determine whether petitioner's counsel violated this provision. As with a Rule 11 sanction, district courts have broad discretion in deciding upon a sanction award under § 1927. *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1187–88 (7th Cir.1992) (applying Rule 11 standard to § 1927 sanction). Under Rule 11, sanctions are imposed in proportion to the egregiousness of the act. This same principle also applies to sanctions under § 1927. *Id.* Even if petitioner's counsel had violated § 1927, an amount no higher than $3,000 would be warranted because petitioner's counsel's conduct was unreasonable only when she opposed the motion to dismiss and not when she filed the petition originally.

### ORDER

IT IS ORDERED that Ann E. Curtiss, counsel for petitioner Gerald A. Meier, is to pay claimants Michael Getchell, State Farm Fire & Casualty Company and Diane Acker $3,000 in attorney fees, pursuant to Fed. R.Civ.P. 11(c).